IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

**JEANETTE McCALLISTER,**

      **Plaintiff,**

**v.**                                          **CIVIL ACTION NO.:** 3:17-cv-02437

                                                      **JUDGE:**

**WELLS FARGO BANK, NA;**
**SANJUKTA SANYAL;**
**SENECA TRUSTEES, INC.;**
**SERVICELINK FIELD SERVICES, LLC;**
**AUCTION.COM, INC.;**
**AUCTION.COM REAL ESTATE DISPOSITION, LLC, and**
**SCHILLING'S TOWING & RECOVERY LLC,**

      **Defendant.**

## COMPLAINT

1.      The causes of action that are the subject matter of this civil action all arose in Putnam County, West Virginia.

2.      Jeanette McCallister is a widow woman and a citizen of Ohio, maintaining her permanent domicile at 4445 Crosby Cook Rd., Rome, OH 44085.

3.      Wells Fargo Bank, NA is a lender transacting business in West Virginia from a number of addresses throughout the United States, including: Corporate Offices, 420 Montgomery St., San Francisco, CA 94104; CSC-Lawyers Incorporating Service, 2730 Gateway Oaks Dr., Suite 100, Sacramento, CA 95833; Wells Fargo Bank, NA, 101 North Phillips Ave., Sioux Falls, SD 57104

and Wells Fargo Home Mortgage Customer Care and Recovery Group, PO Box 10335, Des Moines, IA 50308-0335; Wells Fargo Bank, NA is a citizen of California.

4.  Sanjukta Sanyal is employed by Wells Fargo Bank, NA as an "Executive Resolution Specialist, Customer Care and Recovery Group," PO Box 10335, Des Moines, IA 50306-0335; Sanjukta Sanyal is a citizen of Iowa.

5.  Seneca Trustees, Inc. is a West Virginia for profit corporation having its principal office at 5000 Coombs Farm Dr., Suite 104, Morgantown, WV 26508; Seneca Trustees, Inc. transacts business in Putnam County, West Virginia, providing debt collection trustee services in foreclosure proceedings on a piece work contract basis for Wells Fargo Bank, NA; Seneca Trustees is a citizen of West Virginia.

6.  Servicelink Field Services, LLC is a debt collector and Delaware limited liability company having its principal office at 10385 Westmoor Ave., Suite 100, Westminster, CO 80021; Servicelink Field Services, LLC transacts business in Putnam County, West Virginia providing debt collection services relative to foreclosed real estate on behalf of Wells Fargo Bank, NA; Servicelink Field Services, LLC is a citizen of Colorado.

7.  Auction.Com, Inc. is a California corporation and Auction.com Real Estate Disposition, LLC is a California business entity; both entities are providers of online real estate information to be used in foreclosure proceedings taken against Putnam County, West Virginia real estate on behalf of Wells Fargo Bank, NA; Auction.com, Inc. and Auction.Com Real Estate Disposition, LLC are authorized to transact business in West Virginia from an office at One Mauchly,

Irvine, CA 92618; Auction.Com, Inc. and Auction.com Real Estate Disposition, LLC are citizens of California.

8.    Schilling's Towing & Recovery, LLC is a West Virginia limited liability company having its principal place of business at 744 1st Avenue South, Nitro, WV 25143; Schilling's Towing & Recovery provides removal and disposal services relative to foreclosed real estate in Putnam County, West Virginia on behalf of Wells Fargo Bank, NA; Schilling's Towing & Recovery, LLC is a citizen of West Virginia.

9.    The amount in controversy herein between the Plaintiff and Defendants, exclusive of interest and costs, exceeds the sum of $75,000.00.

10.    This Court has jurisdiction to hear this cause based upon the complete diversity of citizenship of the parties to this action, the amount in controversy exceeding $75,000.00, and the provisions of *United States Code, Title 28, Section 1332.*

11.    At all times relevant to this civil action, Jeanette McCallister has been the owner of a 0.34 acre parcel of land situated in Poca District, Putnam County, West Virginia.

12.    Jeanette McCallister acquired this property by virtue of a deed dated December 30, 1998, from James H. McCallister and Irene McCallister, his wife, to James W. McCallister and Jeanette McCallister, his wife, as joint tenants with the rights of survivorship.

13.    The December 30, 1998, deed, together with an attached map depicting the boundaries of the subject 0.34 acre parcel, was recorded in the office

of the Clerk of the County Commission of Putnam County, West Virginia, on January 6, 1999, in Deed Book 398, pages 72, 73 and 74; this map and deed have remained properly on public record since the date of recording.

14.    The December 30, 1998, deed and map have not only been publicly recorded at the County Courthouse in Winfield, West Virginia, but the said deed and map have been accessible to the public for at least two years through the online data search provided by the Putnam County Clerk at his Internet website.

15.    Jeanette McCallister obtained complete ownership of the subject 0.34 acre parcel by virtue of the survivorship provisions of the aforesaid deed which took effect at the time of the death of her husband, James W McCallister, in the year 2015.

16.    After Jeanette McCallister and her late husband acquired the subject 0.34 acre parcel, they constructed a concrete foundation on the parcel as a permanent location for a camping trailer or recreational vehicle to be used by Jeanette McCallister, her late husband and their children as a hunting camp or rural retreat during visits to their home place in West Virginia.

17.    In April 2004, Jeanette McCallister and her late husband purchased a new 2004 Nomad Travel Trailer from Burdette Camping Center, Inc. in Winfield, West Virginia, which they properly titled in Ohio with title number 0400595154.

18.    At all times relevant to this civil action, Jeanette McCallister has remained the lawful title owner of the aforesaid 2004 Nomad Travel Trailer, Ohio title number 0400595154, having obtained complete ownership of that unit by virtue of the joint titling thereof and the death of her husband in the year 2015.

19.     Jeanette McCallister and her late husband placed the Nomad Travel
Trailer on the concrete foundation they had constructed on the 0.34 acre parcel of
land they owned in Putnam County and connected the unit to public sewer, water
and electric services so that it would be a suitable permanent location for use as a
hunting camp or rural retreat by them and their extended family when they
answered the call of "Country Roads" and came home to visit the place they
belong.

20.     At the same time Jeanette McCallister and her late husband
established the Nomad Travel Trailer as a hunting camp or rural retreat, they
installed a second concrete foundation and used it for placement of a sizable metal
storage building to hold tools and personal property used by them and their
families during their return trips to West Virginia.

21.     Jeanette McCallister, her late husband and their children and
extended family used their hunting camp and rural retreat in Putnam County, West
Virginia, for their quiet enjoyment and relaxation, without interference and
without interruption for a period of 12-1/2 years, commencing in April 2004 and
ending in January 2017.

22.     Following the death of her husband in the year 2015, the use and
significance of the Putnam County hunting camp and rural retreat became even
more precious to Jeanette McCallister, her children and extended family because
of the cherished memories and experiences they all had together visiting their
ancestral home in West Virginia while Jim McCallister was still alive.

23.     In early January 2017, Jeanette McCallister learned that her Nomad
Travel Trailer had been stolen from her property and that the locks had been cut
from the door of her storage building and the contents stolen as well.

24.     Immediately upon being advised of the theft of her Nomad Travel Trailer and the contents of her storage building, Jeanette McCallister made the five-hour trip from her home in Ohio to Putnam County, West Virginia, and found that her Nomad Travel Trailer had, indeed, been ripped from its utility connections and stolen, and that her lock had been cut from her storage building and all the contents stolen as well.

25.     Jeanette McCallister immediately reported the theft of her Nomad Travel Trailer and contents of her storage building to the West Virginia State Police at the Winfield, West Virginia detachment.

26.     After she had suffered considerable upset, annoyance, inconvenience and apprehension, Jeanette McCallister was advised by the authorities that a criminal investigation would be underway but that information had been developed implicating some or all of the above-named defendants in the deliberate theft, conversion and removal of Jeanette McCallister's Nomad Travel Trailer and personal property from the parcel of land she owned.

27.     On May 27, 2010, Wells Fargo Bank NA obtained a security interest in a parcel of land owned by Jeanette McCallister's predecessor in title and located immediately adjacent to and abutting upon the 0.34 acre parcel Jeanette McCallister and her late husband acquired in 1999.

28.     The security interest obtained by Wells Fargo Bank, NA in the parcel of land immediately adjacent to and abutting upon Jeanette McCallister's property was evidenced by a deed of trust recorded in the Putnam County Clerk's office in Trust Deed Book 939, at page 300.

29.    The property description in the deed of trust giving Wells Fargo Bank, NA a security interest in a parcel immediately adjacent to and abutting upon Jeanette McCallister's property contained an incorrect, all-inclusive back reference stating that the security interest attached to all of the property obtained by Jeanette McCallister's predecessors in title by virtue of 1989 deed, recorded in the Putnam County Clerk's office in Deed Book 318, at page 559.

30.    The failure of Wells Fargo Bank, NA to unambiguously describe the parcel in which it claimed a security interest as being exclusive of the 0.34 acre tract acquired by Jeanette McCallister and her late husband in 1999 was an act of carelessness, recklessness and negligence and unfair and unconscionable conduct in the collection of or attempt to collect a debt.

31.    On November 15, 2016, Wells Fargo Bank, NA, acting by and through Seneca Trustees, Inc. as its designated substitute trustee, sought to enforce its security interest created by the May 27, 2010, deed of trust by offering the subject real property for sale at the front door of the Putnam County courthouse.

32.    Wells Fargo Bank, NA was the sole bidder at the November 15, 2016, foreclosure sale, and on November 18, 2016, Seneca Trustees, Inc. executed a deed in favor of Wells Fargo Bank, NA and recorded that deed in the Putnam County Clerk's office in Deed Book 554, at page 996; this deed included the same erroneous, all-inclusive back reference contained in the 2010 deed of trust, failing to clearly exclude from the conveyance the 0.34 acre tract previously deeded to Jeanette McCallister and her husband in 1999.

33.    The failure of Seneca Trustees, Inc. to unambiguously describe the parcel which it conveyed to Wells Fargo Bank, NA as being exclusive of the 0.34 acre tract acquired by Jeanette McCallister and her late husband in 1999 was an

act of carelessness, recklessness and negligence and unfair and unconscionable
conduct in the collection of or attempt to collect a debt.

34.    Upon information and belief, on or about December 7, 2016, Service
Link Field Services, LLC, Auction.Com, Inc. and Auction.Com Real Estate
Disposition, LLC performed some sort of high risk title evaluation service that
failed to note the exclusion of Jeanette McCallister's 0.34 acre tract from the land
acquired by Wells Fargo Bank, NA in the November 18, 2016, foreclosure deed.

35.    The failure of Service Link Field Services, LLC and Auction.Com
Real Estate Disposition, LLC to inform Wells Fargo Bank, NA that the parcel
acquired through foreclosure was exclusive of the 0.34 acre tract acquired by
Jeanette McCallister and her late husband in 1999 was an act of carelessness,
recklessness and negligence and to unfair and unconscionable conduct in the
collection of or attempt to collect a debt.

36.    Sometime between December 7, 2016, and January 23, 2017,
Service Link Field Services, LLC and Schilling's Towing & Recovery, LLC
deliberately, intentionally, unlawfully, recklessly and feloniously entered upon the
real property owned by Jeanette McCallister and, at the express direction and
under the control of Wells Fargo Bank, NA proceeded to steal, take and carry
away Janet McCallister's Nomad Travel Trailer together with all of the furniture,
fixtures and effects therein and the entire contents of Janet McCallister's storage
building.

37.    The actions of Wells Fargo Bank, NA, Service Link Field Services,
LLC and Schilling's Towing & Recovery, LLC in deliberately, intentionally,
recklessly and feloniously entering upon Janet McCallister's real property for the
purpose of stealing, taking and carrying away Janet McCallister's Nomad Travel

Trailer together with all of the furniture, fixtures and effects therein and the entire contents of Janet McCallister's storage building were acts amounting to unfair and unconscionable conduct in the collection of or attempt to collect a debt and to the intention or grossly negligent infliction of emotional distress upon Jeanette McCallister..

38.    Between December 7, 2016, and January 23, 2017, Wells Fargo Bank, NA, Service Link Field Services, LLC and Schilling's Towing & Recovery, LLC deliberately, intentionally, recklessly and feloniously broke open the doors of Jeanette McCallister's Nomad Travel Trailer and cut the lock off Jeanette McCallister's storage building, tore Jeanette McCallister's Nomad Travel Trailer loose from its public utility connections and towed the unit for several miles with one tire missing and without securing any of the furniture, fixtures and effects inside the unit.

39.    As a direct and proximate result of the conduct of Wells Fargo Bank, NA, Service Link Field Services, LLC and Schilling's Towing & Recovery, LLC as aforesaid, Jeanette McCallister's Nomad Travel Trailer has been rendered a total loss.

40.    On or about January 23, 2017, immediately upon learning that Wells Fargo Bank, NA had initiated the unlawful entry onto her Putnam County, West Virginia real property and the removal and destruction of her Nomad Travel Trailer and the breaking and entering of her storage shed and theft and disposal of her personal property, Jeanette McCallister made contact with Wells Fargo Bank, NA by reaching out to Sanjukta Sanyal as an "Executive Resolution Specialist, Customer Care and Recovery Group" and an agent, servant and employee of Wells Fargo Bank, NA.

9

41.    Sanjukta Sanyal, acting in her capacity as an agent, servant and employee of Wells Fargo Bank, NA within the course of her employment and in furtherance of the business of Wells Fargo Bank, NA dismissed the claims of Jeanette McCallister as lies, told Jeanette McCallister that she did not own the property she claimed, and that she did not own the Nomad Travel Trailer or personal property stolen from the storage shed on Jeanette McCallister's property; Sanjukta Sanyal refused to tell Jeanette McCallister where her Nomad Travel Trailer and the stolen personal property were located and categorically refused to instruct the agents of Wells Fargo Bank, NA to return the Nomad Travel Trailer to its original location, reconnect it to the utility services and restore Jeanette McCallister's stolen personal property.

42.    As a direct and proximate result of the deliberate, reckless, vexatious and unlawful conduct of Sanjukta Sanyal, acting in her capacity as an agent, servant and employee of Wells Fargo Bank, NA within the course of her employment and in furtherance of the efforts by Wells Fargo Bank, NA to collect a debt allegedly due, Jeanette McCallister was compelled to hire counsel on February 1, 2017, in an attempt to recover the damages she had sustained as a result of the deliberate, reckless, vexatious, negligent and unlawful conduct of all the defendants named in this action, all of whom committed acts which caused and contributed in some degree to the damages Jeanette McCallister has sustained.

43.    Between February 1, 2017, and March 29, 2017, Jeanette McCallister, acting by and through her counsel, provided Sanjukta Sanyal and Wells Fargo Bank, NA with surveyor plats, deeds, vehicle titles and all of the information regarding Jeanette McCallister's lawful ownership of the property upon which defendants Wells Fargo Bank, NA, Service Link Field Services, LLC, Auction.Com, Inc., Auction.com Real Estate Disposition, LLC and Schilling's

Towing & Recovery, LLC committed acts of trespass, breaking and entering and grand larceny.

44.     Jeanette McCallister repeatedly requested that the effects of the combined and concurring negligence, recklessness, deliberate and unlawful conduct of all the defendants be rectified and that she be made whole, including some compensation for the attorney fees she incurred as a result of this conduct and the general damages she sustained for aggravation, annoyance, inconvenience and severe emotional distress.

45.     On or about March 30, 2017, Jeanette McCallister was advised that Wells Fargo Bank, NA considered the matter closed; that Jeanette McCallister could be reimbursed for a little over $3,000 for the property that was stolen from her and that her Nomad Travel Trailer would be dropped off at some location she selected but not returned to her property and reconnected to utility services; Jeanette McCallister was further told that all of this could only be done if she signed a release and hold harmless agreement and agreed to pay all of her attorney fees and bear all of the expenses of her travel, inconvenience, emotional distress and other general damages she sustained.

46.     In an act of reckless, deliberate and disingenuous meanness, Sanjukta Sanyal and Wells Fargo Bank, NA, acting through its authorized agent, Sanjukta Sanyal, advised Jeanette McCallister that they persisted in the position that Jeanette McCallister has a boundary line dispute with her neighbor to be resolved with Wells Fargo's successor in title even though Wells Fargo Bank, NA, Sanjukta Sanyal and all of the other defendants involved in this transaction know that is a lie.

11

47.    The conduct of Wells Fargo Bank, NA and Sanjukta Sanyal relative to Jeanette McCallister between December 7, 2016, and March 30, 2017, was deliberate, intentional, reckless, permeated with lies and falsehoods and just plain stupid to the extent that such conduct should be punished with an award of punitive damages in favor of Jeanette McCallister in an amount sufficient to deter these individuals from similar future conduct and punish them significantly for the deliberate, intentional, reckless, false and just plain stupid actions they have committed towards Jeanette McCallister.

48.    The conduct of all of the defendants is the result of a civil conspiracy entered into by each of these defendants and evidenced by the overt acts engaged in by all of the defendants for purposes of making money foreclosing on properties in reliance on inaccurate information, gross negligence, intentional misconduct and disregard of the real and personal property rights of innocent people like Jeanette McCallister.

49.    The conduct of all the defendants relative to Jeanette McCallister constitutes the tort of outrage, trespass, intentional infliction of emotional distress, intentional destruction of both real and personal property, criminal invasion of privacy, abuse of process, and the use of abusive and oppressive conduct in an attempt to collect an alleged debt and conversion.

50.    As a direct and proximate result of the deliberate, intentional, reckless, negligent, vexatious, false and just plain stupid conduct of the defendants, Jeanette McCallister has suffered loss or injury to her personal property in an amount exceeding $20,000; she has incurred the obligation to pay attorney fees, and she has sustained considerable aggravation, annoyance, inconvenience and emotional distress intentionally inflicted upon her by the defendants.

WHEREFORE, Jeanette McCallister demands judgment against the defendants, or either of them, in an amount of money sufficient to compensate her for the specific and general damages she has sustained and for an additional award of exemplary or punitive damages against any or all of the defendants in an amount sufficient to punish and chastise them or their conduct and to deter similar conduct in the future.

Jeanette McCallister further prays that she be awarded all of her costs expended in the prosecution of this action, her expenses incurred in the development and presentation of this case and such reasonable attorney fees as she has incurred or may be expected to incur, together with both pre-judgment and post-judgment interest on the same at the lawful rate from the date these causes of action occurred until the date of payment.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE HEREIN.

JEANETTE MCCALLISTER
BY COUNSEL

HARVEY D. PEYTON, ESQUIRE
West Virginia State Bar No. 2890
PEYTON LAW FIRM, PLLC
2801 First Avenue, P.O. Box 216
Nitro, WV 25143
Telephone:    (304) 755-5556
Telefax:       (304) 755-1255
*Counsel for the Plaintiff*